## STATE v. HAYNES, SHICK AND AUSTEEL.

## Opinion delivered December 5, 1927.

1. CARRIERS—REGULATION OF MOTOR VEHICLES.—Under Acts 1927, p. 257, placing motor vehicles under the control of the Arkansas Railroad Commission when operating a service between cities or towns, the term "between cities or towns" is used to designate the· *termini* of the line or route, and it makes no difference whether the station at which passengers or freight are loaded and unloaded is within the corporate limits or just outside the corporate limits of the cities or towns which are the *termini* of the route.

2. CARRIERS—REGULATION OF MOTOR VEHICLES BETWEEN CITIES AND TOWNS.—Under Acts 1927, p. 257, regulating motor transportation between cities and towns, the word "town" as used in its popular sense means an aggregation of houses so near one another that the inhabitants may fairly be said to dwell together; and a "city" means a large town, which is a municipal corporation charged with specified duties of government within its limits.

3. CARRIERS—OPERATION OF TAXICAB.—One operating a taxicab in a city who occasionally goes outside of the city to deliver passengers was not within the provisions of Acts 1927, p. 257, placing commercial motor transportation under the Railroad Commission.

4. CARRIERS—OPERATOR OF SIGHT-SEEING BUS.—The operator of a sight-seeing bus commencing its journey in the city of Hot Springs, and going to Remmel Dam and certain springs near, and returning to Hot Springs, but going through no cities or towns in making the trip, did not come within the provisions of Acts 1927, p. 257, placing commercial motor transportation under the Arkansas Railroad Commission.

5. CARRIERS—OPERATOR OF TAXICAB SERVICE.—One· operating a taxicab service from hotels and the city of Hot Springs to the Hot Springs Country Club or golf course about three miles from the city limits, where he did not go through any cities or towns, was not within the provisions of Acts 1927, p. 257, placing commercial motor transportation under control of the Arkansas Railroad Commission.

Appeal from Garland Circuit Court; *Earl Witt,* Judge; affirmed.

### STATEMENT BY THE COURT.

Separate indictments were returned against John W. Haynes, Jr., Alf Shick and Porter W. Austeel, charging them with a violation of the provisions of an act passed by the Legislature of 1927, placing commercial motor transportation under the Arkansas Railroad Commission, under certain conditions.

Under the agreed statement of facts, John W. Haynes, Jr., is the owner of a motor vehicle commonly called a taxicab, and occupies a stand on one of the streets in the city of Hot Springs, Garland County, Arkansas, under an ordinance passed by the city council. He has paid the State Highway Department for a license for his car, as required by statute, and has paid to the city of Hot Springs the license fee provided by ordinance for operating a taxicab upon the streets of said city. Haynes does a general taxicab business in said city, and also accepts passengers for hire, to be delivered to points outside of the city limits of Hot Springs, but he does not operate his taxicab over a fixed route between different towns or points.

According to the agreed statement of facts, Alfred Shick is the owner of a motor-propelled vehicle, commonly known as a sight-seeing bus, and maintains a stand on one of the streets of the city of Hot Springs under the provisions of a city ordinance. He has paid the license fee to the State Highway Department required by statute, and has paid to the city of Hot Springs the license fee required by ordinance for operating said sight-seeing bus in said city. He carries passengers in his sight-seeing bus to points in and outside of said city, including Remmel Dam and certain springs, which are specifically named. None of these places, however, are cities or towns, and, in making the sight-seeing trip, the defendant does not pass through any city or town. He operates his bus over no regular circuit on the highways of the State.

According to the agreed statement of facts, Porter W. Austeel is the owner of a motor-propelled vehicle commonly known as a taxicab, and maintains a stand on one of the streets of the city of Hot Springs under an ordinance of said city. He has paid to the State Highway Department the license fee required by statute, and also has paid the license fee required under the ordinance of the city of Hot Springs for operating his taxicab in said city. He does a general taxicab business in said city, and also operates a taxicab between the hotels of the city of Hot Springs and the Hot Springs Country Club, which is a distance of about three miles from said city. In going to and from the city of Hot Springs to the golf course at said country club, he traverses no town or city, and the Hot Springs Country Club is not a town or city.

In each case the circuit court was of the opinion that the provision of the statute under which the indictments were returned had not been violated, and judgment was rendered accordingly. From the judgments rendered an appeal to this court has been duly prosecuted in each case by the State.

*H. W. Applegate,* Attorney General, and *Hal L. Norwood,* Assistant, for appellant.

*A. T. Davies,* for appellee.

HART, C. J., (after stating the facts). The three cases have been consolidated for the purposes of appeal, and involve the construction of act 99, approved March 4, 1927. Acts of 1927, p. 257. Under § 1 of the act there is a proviso that the term ''motor vehicles'' or ''motor-propelled vehicles'' as used in the act shall only include a motor vehicle operating a service between cities or towns. The section also provides that the term ''improved public highway,'' wherever used in the act, means every improved public highway in the State which is or may hereafter be declared to be a part of the State highway system, or a county highway system, or the streets of any city or town. The act contains fourteen sections, and provides that every corporation or person operating motor vehicles within the terms of the act shall

procure a license therefor from the Arkansas Railroad Commission, and comply with the reasonable rules and regulations prescribed by said commission. Section 8 makes it a misdemeanor to operate a motor vehicle as provided in the act without first securing a permit from said commission. Section 10 provides that no city or town shall impose any tax or license upon a motor-vehicle carrier licensed under the provisions of the act. Other provisions of the act show that it was the intention of the framers of it to apply it to motor vehicles being operated over fixed routes and as a common carrier of passengers or of freight.

It will be noted that subdivision D of § 1 contains the following: "Provided, the terms 'motor vehicles' or 'motor-propelled vehicles' as used in this act shall only include a motor vehicle operating a service between cities or towns."

Other provisions of the act show that the motor vehicles coming within its terms are common carriers which operate over a fixed route.

We are of the opinion that the term "between cities or towns" is used to designate the *termini* of the line or route, and it would not make any difference whether the station at which passengers or freight are loaded and unloaded were within the corporate limits or just outside the corporate limits of the cities or towns which are the *termini* of the route.

In *Murray* v. *Menefee,* 20 Ark. 561, the court had under consideration a statute relative to locating ferries in or near cities or towns where the public convenience may require it. The court said that in this country there seems to be no precise legal definition of the term town, and that it was used in the statute in its popular sense. In that case the place claimed to be a town had a business house, dwelling houses for two families, and the population of the two families embraced six persons. The court said to call the place a town in any sense would be an obvious misapplication of the term. Again, in *Clements* v. *Crawford County Bank,* 64 Ark. 7, 40 S. W. 132, 62 Am.

St. Rep. 149, the court had under consideration what constituted a town or village within the meaning of our Constitution relating to homesteads, and again approved the definition of the word as used in its popular sense in the first case cited. Hence it may be said that the word "town," as used in the statute, is to be considered in its popular sense as an aggregation of houses so near one another that the inhabitants may fairly be said to dwell together. 38 Cyc. 596.

The word "city" in the United States denotes a large town, and is a municipal corporation charged with certain specified duties of government within its territorial limits. 11 C. J. 787, and *Ford* v. *Delta & Pine Land Co.,* 164 U. S. 662, 17 S. Ct. 230, 41 L. ed. 590.

We think that the framers of the statute in question used the words "city" and "town" in the popular sense, as above stated, and only meant to place within the jurisdiction of the Arkansas Railroad Commission common carriers operating motor vehicles over a fixed route between cities and towns. The cities or towns are required to be the *termini* of the route. Stations might be established within, or reasonable distances without, the limits of said cities or towns for the purpose of receiving and discharging passengers or loading and unloading freight.

Under the agreed statement of facts, none of the defendants came under the provisions of the act.

Haynes was operating a taxicab in the city of Hot Springs, and the mere fact that he went outside of the city on certain occasions to deliver passengers did not bring him within the provisions of the act in question.

The agreed statement of facts shows that Shick operated a sight-seeing bus, commencing its journey in the city of Hot Springs and going to Remmel Dam and certain springs near, and returning to the city of Hot Springs. In making the sight-seeing trip the bus did not go through any city or town. Consequently the operator did not come within the provisions of the statute.

Under the agreed statement of facts, Austeel operated a taxicab service from the hotels in the city of Hot Springs to the Hot Springs Country Club, or golf course, which was about three miles from the city limits. In going to and from the city to the golf course he did not go through any city or town. He only went to and from the hotels in the city to the golf course, when passengers desired such service.

The defendants all complied with the ordinance of the city of Hot Springs regulating the operation of taxicabs, and we are of the opinion that, under the facts stated, the defendants were not operating motor vehicles as prescribed in the act, and that the circuit court properly held that the Arkansas Railroad Commission had no jurisdiction over them. It follows that the judgment in each case will be affirmed.